**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SMK ASSOCIATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 0284 |
| | ) | |
| v. | ) | |
| | ) | Judge John Z. Lee |
| SUTHERLAND GLOBAL SERVICES, INC., | ) | |
| and MICHAEL BARTUSEK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff SMK Associates, LLC ("SMK") sued Defendant Sutherland Global Services, Inc.

("Sutherland") and its former Chief Financial Officer, Michael Bartusek, alleging that Sutherland

breached two contracts to sell SMK tobacco products. In its July 9, 2018 ruling, the Court

determined that the liquidated damages provisions that formed the basis of SMK's damages claim

were unenforceable penalties under Illinois law. Mem. Op. & Order at 14, ECF No. 168. SMK

has moved for partial reconsideration of the Court's decision. For the following reasons, the

motion [173] is denied.

**<u>Background</u>**

SMK sued Sutherland and Bartusek in 2014, alleging breach of two contracts for the sale

of cigarettes. *See generally* Compl., ECF No. 1. At the center of the dispute are two purchase

orders ("POs") sent in June and July 2012. At the pretrial conference in May 2017, SMK conceded

that its damages claim was based solely on a liquidated damages provision contained in both the

June and July POs. The clause ("the 10% Damages Provision") provided for a "10% penalty for

non performance payable to [SMK] by vendor should goods fail to be delivered timely and/or

goods are not genuine or in any other manner different than represented by vendor to [SMK]." 7/13/2012 PO at SMK00004. The parties consented to an evidentiary hearing on the enforceability of the 10% Damages Provision, which was held on June 5, 2017.

Based on evidence presented at the hearing, the Court found the following: (1) at the time of contract formation, damages from a breach were difficult to measure; (2) 10% was an unreasonable estimate of actual damages suffered by SMK; and (3) the 10% figure was invariant to the gravity of the breach, and therefore an unreasonable attempt to estimate damages. In sum, the Court concluded, "Sutherland ha[d] sustained its burden of demonstrating that [the 10% Damages Provision] contained in the June and July POs [was] an unenforceable penalty clause under Illinois law." Mem. Op. & Order at 14. The Court presumes familiarity with its prior order.

## Legal Standard

District courts have discretion to entertain motions to reconsider prior decisions. *See Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015); Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."). But while motions for reconsideration are permitted, "they are disfavored." *Patrick*, 103 F. Supp. 3d at 911. They serve a narrow purpose: correcting manifest errors of law or fact and presenting newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). This is a heavy burden for the moving party and makes a motion for reconsideration an inappropriate medium to "rehash" past arguments, *Patrick*, 103 F. Supp. 3d at 912 (citations omitted), or revisit improvident strategic decisions made earlier, *Birdo v. Dave Gomez*, No. 13-CV-6864, 2016 WL 6070173, at *1 (N.D. Ill. Oct. 17, 2016) (citation omitted). Motions for reconsideration will be granted only when "the Court has patently misunderstood a

party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). Given these exacting standards, issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.* (citation omitted).

**Analysis**

SMK asks the Court to reconsider its July 9, 2018, decision as to the July PO, arguing that the 10% Damages Provision is enforceable under Illinois law as to that particular PO. SMK contends that the Court failed to account for evidence predating the July PO that demonstrates the reasonableness of the 10% Damages Provision contained therein. Further, according to SMK, the Court incorrectly concluded that, as applied to the July PO, the provision was invariant to the gravity of the breach. Both arguments are incorrect. The Court addressed both points in its July 9 order, and SMK fails to identify any manifest error of law or fact warranting reconsideration.

**I.      Evidence of the 10% Damages Provision's Reasonableness**

SMK first contends that the Court failed to consider evidence showing that the 10% figure was reasonable as to the July PO in light of the anticipated or actual loss caused by Sutherland's breach. SMK points to two "Letter[s] of Intent suggesting that [SMK] stood to make a profit margin of 12.5%" on the July PO, referring to two nearly-identical letters SMK received on July 3 and 4, 2012, from a company called Unibev Ltd. Pl.'s Reply at 2, ECF No. 175. The letters indicate that Unibev sought to purchase Marlboro Gold cigarettes at a price of $810 per master case. Since the July PO ordered Marlboro Gold cigarettes at $720 per master case, as SMK sees it, the letters indicate that SMK would have made a 12.5% profit from the July PO, making the 10% damages estimate "entirely reasonable." Pl.'s Mot. Reconsider at 6, ECF No. 173.

As an initial matter, the Court agrees with SMK that the July 9 order explicitly addresses the significance of the Unibev letters as to the June PO, but not the July PO, stating: "The only evidence indicating a higher profit margin is from no earlier than July 3, 2012, after the [June] contract was formed." Mem. Op. & Order at 11. But this alone does not warrant reconsideration, because the July 9 order makes clear that these letters (and others like them) are not sufficient to support the conclusion that the 10% Damages Provision was reasonable as to *either* PO. As the Court previously determined, these letters were, "at best, merely introductory letters expressing initial interest, rather than a definitive discussion of terms," further evidenced by the fact that SMK's sole owner, member, and employee, Martin Borg, "knew almost nothing about the individuals or companies that sent the documents, or how he had come to be in possession of them." *Id.* at 6. The Court further noted that "all of SMK's estimates of its actual damages rely exclusively on Borg's speculation about his ability to re-sell cigarettes, without any evidence of any actual anticipated sales to potential buyers." *Id.* at 12.

The Unibev letters are far from a definite indication that SMK "stood to make a profit margin of 12.5%." Pl.'s Reply at 2. And SMK fails to explain in its motion for reconsideration how these letters were more than mere introductory letters that were too speculative to support the 10% damages figure. Indeed, it is difficult to see how SMK could do so. As Sutherland correctly points out, the letters were not issued directly to SMK, but rather, "to whom it may concern." Moreover, Borg did not recall how he received the letters, did not have any personal knowledge as to whether Unibev had funding, and "never followed up with Unibev in any way after receiving [the letters]—not even after he issued the July [PO], which supposedly was issued to supply Unibev with product." Def.'s Resp. Opp. Mot. Reconsider at 3, ECF No. 174. What is more, Borg's own testimony at the evidentiary hearing—that he chose the 10% figure in February 2012

4

because it was less than what he expected to receive from a successful cigarette transaction and because he had never seen a penalty clause for less than 10%—belies SMK's argument that the Unibev letters supported a reasonable estimate of damages at 10% five months later. *See* Hearing Tr. at 186:20–187:2.

In sum, the Court's prior order considered the Unibev letters and other similar evidence and determined that, as to both the June and July POs, the evidence was insufficient to support a finding that the 10% Damages Provision was reasonable.

## II. The Invariance of the 10% Damages Provision

SMK next argues that the Court incorrectly concluded that, as to the July PO, the 10% Damages Provision was invariant to the gravity of any potential breach. It contends that the Court's conclusion was based on issues unique to the June PO, such as the fact that the June PO sought monthly deliveries over a significant period of time.

Here, too, SMK is mistaken. Although the July 9 order did discuss problems with the 10% Damages Provision as applied to the June PO's monthly delivery schedule, that was not the only reason for concluding that the provision was invariant. Rather, the Court also noted that the 10% Damages Provision, which is contained in *both* POs, "entitle[d] SMK to 10% of the purchase price whether no cigarettes were delivered, or whether all of the cigarettes were delivered but some did not meet the specifications in any manner." Mem. Op. & Order at 13. The Court determined that the provision "could not be more clear" in that it applied to *any* breach, regardless of scale, and therefore, that it was not a reasonable attempt to estimate damages. *Id.* SMK's attempt to recast the Court's conclusion as one based solely on concerns over "vagaries" associated with a contract for monthly deliveries is unavailing.

## **Conclusion**

For the reasons stated herein, SMK's motion to reconsider [173] is denied.

**IT IS SO ORDERED.**                    **ENTERED    11/09/18**

_[signature]_

_____

**John Z. Lee**
**United States District Judge**